UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LACEY SPIERLING,<br><br>             Plaintiff,<br><br>    v.<br><br>GREAT LAKES SERVICES, LLC, a Delaware limited liability company; and CTGW, LLC, a Delaware limited liability company,<br><br>             Defendants. | CASE NO. C11-5837 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants Great Lakes Services, LLC ("Great Lakes"), and CTGW, LLC's ("CTGW") (collectively "Defendants) motion for summary judgment (Dkt. 17). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On September 9, 2011, Plaintiff Lacey Spierling ("Spierling") filed a complaint in Thurston County Superior Court for the State of Washington alleging negligent

ORDER - 1

hiring/supervision and defamation. Dkt. 4, Declaration of Leigh Ann Collings Tift, Exh. A ("Complaint"). On October 11, 2011, Defendants removed the matter to this Court. Dkt. 1.

On September 10, 2012, Defendants filed a motion for summary judgment. Dkt. 17. On October 1, 2012, Spierling responded. Dkt. 20. On October 5, 2012, Defendants replied. Dkt. 25.

## II. FACTUAL BACKGROUND

Great Lakes owns the Great Wolf Lodge ("Lodge") in Grand Mound, Washington. In June of 2009, Great Lakes hired Spierling as an aquatic manager. Dkt. 21, Declaration of Lacey Spierling ("Spierling Decl."), ¶ 2. Spierling states that her "employment went relatively smoothly until [she] began receiving very sexually graphic telephone calls from an unknown caller in January of 2010." *Id*. Over the course of the next few months, Spierling received approximately 40 to 50 calls that contained very graphic and threatening content. *Id*. ¶ 4. Spierling reported the calls to her mangers at Great Lakes because, based on some of the statements made by the anonymous caller, Spierling believed that the calls were coming from an unknown employee at the Lodge. *Id*. ¶¶ 5–7. Spierling declares that her "complaints were never taken seriously by [management] and nothing was ever done despite all of [her] communications with the management at [the Lodge]." *Id*. ¶ 9. Spierling also reported the calls to the Lacey Police Department.

On March 3, 2010, Spierling called another employee a "skank." Dkt. 18, Declaration of Leigh Ann Tift, Exh. 8. Having already been suspended for inappropriate conduct and receiving a final written warning, Great Lakes terminated Spierling's

employment as a result of an investigation and the confirmation of Spierling's comment. *Id*. at 39 ("Discipline Form"). Spierling contends that she was really fired because of Great Lakes' Director of Human Resources, Daniel Leonard's, animosity and ulterior motives. Spierling Decl., ¶ 13.

In April of 2012, Mr. Leonard was arrested on charges of felony stalking. Dkt. 19, Declaration of Patrick Alvarez, ¶¶ 3, 6. As a result of a separate investigation, Mr. Leonard was considered a suspect in a California stalking case. Dkt. 24, Declaration of Amy Iverson, Exh. A ("Investigation Records"). Through further investigation and phone records from a "spoofing company," the police determined that Mr. Leonard would call the "spoofing company" enabling him to disguise his voice and the phone number originating the call. *Id*. Mr. Leonard would then convey sexually graphic and threatening comments. *Id*. Spierling contends that "Mr. Leonard made at least 334 of the harassing telephone calls from his work phone." Dkt. 20 at 5 (citing the Investigation Records). Great Lakes suspended, and then terminated Mr. Leonard after his arrest. It contends that the phone records show that "Mr. Leonard's calls were placed to an '866' number that appeared to be located in Knoxville, Tennessee." Dkt. 26, Declaration of Leigh Ann Tift, ¶ 4 (citing *id*. Exh. 7).

During the police investigation, it was determined that Mr. Leonard contacted eleven victims through his position at the Lodge. *See* Dkt. 20 at 5 (citing Investigation Records). There is no evidence, however, that Great Lakes received any complaint about harassing calls from any other employee or guest.

## III. DISCUSSION

As a threshold matter, Spierling fails to address some of Defendants' arguments. The Court may consider a failure to address the moving party's argument as an admission that the argument has merit. Local Rule CR 7(b)(2). First, Spierling fails to address CTGW's argument that it is not an employer and had no duty to supervise Leonard. Dkt. 17 at 6–7. The Court agrees and grants CTGW's motion for summary judgment.

Second, Spierling failed to address Great Lakes' argument that there is no admissible evidence on every element of Spierling's claim for negligent hiring. Dkt. 17 at 8–9. The Court agrees and grants Great Lakes motion on this issue because Spierling has failed to meet her burden.

Spierling's remaining claims are against Great Lakes for negligent supervision, negligent retention and defamation. *See* Dkt. 20 at 7–13.

**A.  Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.      Negligent Retention/Supervision**

In order to establish negligent retention, Spieling must establish, *inter alia*, that the employer knew or should have known that the employee was incompetent or unfit for the position. *Thomas v. City of Seattle*, 395 F. Supp. 2d 992, 1001 (W.D. Wash. 2005) (citing *Peck v. Siau*, 65 Wn. App. 285, 288 (1992)). Similarly, to establish a claim of

1 negligent supervision of an employee, Spieling must prove, *inter alia*, that the employer
2 knew, or in the exercise of reasonable care, should have known, that the employee
3 presented a risk of harm to others.  *Steinbock v. Ferry County Public Utility Dist. No. 1*,
4 165 Wn. App. 479, 490 (2011) (citing *Niece v. Elmview Group Home*, 79 Wn. App. 660,
5 667 (1995), *aff'd*, 131 Wn.2d 39 (1997)).

6       In this case, the relevant question is simple: Would any reasonable juror find that
7 Great Lakes, with the exercise of reasonable care, could have known that Mr. Leonard
8 presented a risk of harm to other employees or was unfit for the position?  The exercise
9 of reasonable care necessarily entails Great Lakes monitoring or investigating Mr.
10 Leonard's phone records after being informed that an employee could be making
11 harassing phone calls to other employees.  However, even if Great Lakes would have
12 investigated Mr. Leonard's records, it would only have discovered multiple calls to a
13 number in Knoxville, Tennessee.  Based on this, the Court concludes that no reasonable
14 juror could find that Great Lakes should have made the connection between a number in
15 Tennessee and harassing phone calls in Olympia, Washington.

16       Spierling asserts two factual allegations in her response that the Court feels
17 compelled to address:

18       Great Wolf Lodge had received complaints from multiple other
individuals concerning extremely similar telephone calls, that in all cases
19       the caller had knowledge of the individual receiving the calls that was
specific to Great Wolf Lodge, and this fact was repeatedly communicated
20       to the management of Great Wolf Lodge.

21       Had Great Wolf Lodge conducted even a cursory investigation, they
would have discovered the hundreds, and likely thousands, of calls made by
22       Mr. Leonard on Great Wolf Lodge's telephone to the spoofing company,

1       which would have enabled them to discover that many of those calls were
placed to the at least eleven individuals with a direct link Great Wolf
2       Lodge.

3 Dkt. 20 at 9–10.  First, the evidence in the record does not support the assertion that any

4 other employee complained to Great Lakes about harassing phone calls.  Thus,

5 Spierling's contentions that the Lodge "had received complaints from multiple other

6 individuals concerning extremely similar telephone calls" and that "this fact was

7 repeatedly communicated to the management of Great Wolf Lodge" are attorney

8 argument unsupported by admissible evidence.  While it is true that the police

9 investigation linked Mr. Leonard to other employees of the Lodge, Great Lakes was

10 informed of this information only after Mr. Leonard's arrest.

11       Second, Spierling fails to show how Great Lakes could have reasonably

12 discovered Mr. Leonard was placing calls to eleven other individuals.  Great Lakes has

13 no right to obtain the business records of another company that would have shown the

14 link between Mr. Leonard's phone number and phone numbers in the Washington area.

15 At most, a review of his phone records would have shown multiple calls to a spoofing

16 company, a hypothetical fact upon which no reasonable juror could find that Mr. Leonard

17 was unfit for his position or that he presented a risk of harm to other employees.

18       Therefore, the Court grants Great Lakes' motion because no questions of material

19 fact exist as to Great Lakes' negligent supervision or retention of Mr. Leonard.

20

21

22

C.  **Defamation**

The elements a plaintiff must establish in a defamation case are falsity, an unprivileged communication, fault, and damages. *Mohr v. Grant*, 153 Wn.2d 812, 822 (2005).

In this case, Spierling fails to submit any admissible evidence that Great Lakes made any statement to any third person or that the statement was untrue. Spierling relies on pure speculation that Great Lakes informed prospective employers of the reasons for Spierling's termination. Spierling's claim appears to revolve around the circumstances of her termination, but this would possibly only be a material question of fact on the element of the falsity of any statement. Spierling, however, has failed to submit admissible evidence on the element of a communication and has failed to meet her burden for summary judgment of showing that a material question of fact exists on every element of her claim. *See Celotex*, 477 U.S. at 323. Therefore, the Court grants Great Lakes' motion on Spierling's defamation claim.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment (Dkt. 17) is **GRANTED.** The Clerk is directed to enter **JUDGMENT** for Defendants.

Dated this 26th day of October, 2012.

BENJAMIN H. SETTLE
United States District Judge